BRIDGET KEENAN et al., as Administratrix, etc., Appellants, *v.* THE NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Respondent.

A servant who sustains an injury from the negligence of a superior agent engaged in the same general business, cannot maintain an action against the common employer, although he was under the control of the agent and could not guard against his negligence.

In an action to recover damages for alleged negligence causing the death of K., plaintiffs' intestate, it appeared that the latter was a car repairer in defendant's employ. In the repair yard where K. was employed were two tracks exclusively for repairing cars, and another track for cars needing repairs, upon which track cars were shunted at all hours of the day. The repairing tracks were protected by flags when men were at work under the cars, but no such precaution was taken on the third track, as no repairing was done thereon. A large number of men were employed in the yard, who were divided into gangs. K. was engaged in repairing a car on one of the repair tracks; needing a bumper spring, and, not being able to obtain it of one of the employees of defendant, whose duty it was to furnish repairing materials, or to find one in the yard, he

reported the fact to T., his gang boss, who directed him to go to said third track and take a spring from a car thereon. While engaged under said car in removing the spring some other cars were backed on the track, moving that under which K. was at work, and he was injured. There was no evidence that it was T.'s duty to furnish materials required by those working under him. *Held,* that defendant was not liable; that T., when he gave the direction, was in no legal sense the representative of defendant, but merely a fellow-servant of K., for whose negligence it was not liable.

(Argued February 7, 1895; decided February 26, 1895.)

APPEAL from order of the General Term of the Superior Court of Buffalo, made February 1, 1894, which reversed a judgment in favor of plaintiffs entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

The action was brought by John Keenan, the present plaintiff's intestate, who died after the date of the entry of judgment, and the present plaintiff was substituted.

*George W. Cothran* for appellants. Tracy, in giving the direction to Keenan to go down on track No. 8 and get a a spring for use in repairing the car he was at work on represented the defendant. In giving that order he discharged a duty which the law required the master to perform and the latter is liable. (*Laning* v. *N. Y. C. R. R. Co.,* 49 N. Y. 521; *Hofnagle* v. *N. Y. C. R. R. Co.,* 55 id. 610; *Howd* v. *M. C. R. R. Co.,* 50 Miss. 178–192; *Benzing* v. *Steinway,* 101 N. Y. 552; *Corcoran* v. *Holbrook,* 59 id. 517–520; *Pantzar* v. *T. F. I. M. Co.,* 99 id. 368.) It was the master's duty to protect the servant. (*McGovern* v. *C. V. R. R. Co.,* 123 N. Y. 280; *Abel* v. *D. & H. C. Co.,* 128 id. 662; *Lafrano* v. *N. Y., etc., W. Co.,* 29 N. Y. S. R. 557; 130 N. Y. 658; *Buckley* v. *P. H. I. O. Co.,* 117 id. 645; *N. P. R. R. Co.* v. *Herbert,* 116 U. S. 642–648; *Hough* v. *R. Co.,* 100 id. 213–217; *Dobbins* v. *Brown,* 119 N. Y. 188; *W. R. Co.* v. *McDaniels,* 107 U. S. 454; *DeGraff* v. *N. Y. C. & H. R. R. R. Co.,* 76 N. Y. 130; *Goodrich* v. *N. Y. C. & H. R.*

*R. R. Co.*, 116 id. 402; *P. Co.* v. *O'Shaughnessy*, 122 Ind. 588; *Goodfellow* v. *B. R. R. Co.*, 106 Mass. 461; *Quirk* v. *Holt*, 99 id. 164; *Marsh* v. *S. P., etc., R. Co.*, 32 Minn. 208; *Taylor* v. *E., etc., R. R. Co.*, 121 Ind. 124; *C., etc., R. R. Co.* v. *Lang*, 118 id. 579; *Coombs* v. *N. B., etc., Co.*, 102 Mass. 572; *Haley* v. *Case*, 142 id. 316; *Crowley* v. *B., etc., R. Co.*, 65 Iowa, 658; *Abel* v. *President, etc.*, 103 N. Y. 581.) The master cannot delegate any one of the duties imposed upon him by law to a servant of any grade so as to exonerate himself from responsibility to another servant who has been injured by its non-performance. (*Pantzar* v. *T. F. I. M. Co.*, 99 N. Y. 368; *Bushby* v. *N. Y., L. E. & W. R. R. Co.*, 107 id. 374; *Benzing* v. *Steinway*, 101 id. 547; *Fuller* v. *Jewett*, 80 id. 46; *Nichols* v. *B. & D. M. Co.*, 53 Hun, 138; 117 N. Y. 646; *Hankins* v. *N. Y., L. E. & W. R. R. Co.*, 142 id. 416; *Bernardi* v. *N. Y. C. R. R. Co.*, 60 N. Y. S. R. 789; *Crispin* v. *Babbitt*, 81 N. Y. 516–521; *Corcoran* v. *Holbrook*, 59 id. 517; *Loughlin* v. *State*, 105 id. 162, 163; *McGovern* v. *C. V. R. R. Co.*, 123 id. 280; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549–553; *McCosker* v. *L. I. R. R. Co.*, 84 id. 77.) Keenan, when he was engaged in the performance of the duty enjoined upon him by the order of Tracy, had a right to understand and assume that the defendant, as master, had exercised, and would exercise, care and diligence in protecting him from injury, from a cause which the exercise of proper care and prudence on the part of the master would have seen and guarded him against. (*Kain* v. *Smith*, 89 N. Y. 375; *Connolly* v. *Poillon*, 41 Barb. 336; 41 N. Y. 619; *Jetter* v. *N. Y. & H. R. Co.*, 2 Abb. Ct. App. Dec. 458; *Ellis* v. *N. Y., L. E. & W. R. Co.*, 95 N. Y. 547; *Marsh* v. *Chickering*, 101 id. 399; *Hough* v. *R. Co.*, 100 U. S. 217; *F. W., etc., R. Co.* v. *Gildersleeve*, 33 Mich. 133; *Noyes* v. *Smith*, 28 Vt. 59–64; 24 N. Y. 414; *Lorey* v. *Hall*, 8 N. Y. S. R. 799; *Powers* v. *N. Y., L. E. & W. R. R. Co.*, 98 N. Y. 280; *R. R. Co.* v. *Fort*, 17 Wall. 558; *Ford* v. *F. R. R. Co.*, 110 Mass. 260; *N. P. R. R. Co.* v. *Herbert*, 116 U. S. 642.) Tracy, in giving the order, was dis-

charging a duty which the law imposed upon the defendant, and in the performance of such duty he was the defendant. (*Booth* v. *B. & A. R. R. Co.*, 73 N. Y. 38; *Flike* v. *B. & A. R. R. Co.*, 53 id. 549; *Sprong* v. *B. & A. R. R. Co.*, 58 id. 58, 59; *Dana* v. *N. Y. C. & H. R. R. R. Co.*, 92 id. 639; *Crayzer* v. *Taylor*, 10 Gray, 274; *Ellis* v. *N. Y., L. E. & W. R. R. Co.*, 95 N. Y. 546; *Stringham* v. *Stewart*, 100 id. 516; *Cone* v. *D., L. & W. R. R. Co.*, 81 id. 206; *Fuller* v. *Jewett*, 80 id. 46; *O'Laughlin* v. *N. Y. C. & H. R. R. R. Co.*, 113 id. 623; *Benzing* v. *Steinway*, 101 id. 547; *Nary* v. *N. Y., O. & W. R. R. Co.*, 125 id. 759; *Keegan* v. *W. R. R. Co.*, 8 id. 175; *Griffin* v. *B. & A. R. R. Co.*, 148 Mass. 133, 145; *Franklin* v. *W. & S. P. R. R. Co.*, 37 Minn. 409; *Crutchfield* v. *R. & D. R. R. Co.*, 76 N. C. 320; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 N. Y. 556.)

*Adelbert Moot* for respondent. As Tracy and his men were co-employees, no cause of action is established by the evidence. A verdict should have been directed for the defendant, and the General Term properly ordered a new trial upon the exceptions. (*Crispin* v. *Babbitt*, 81 N. Y. 522; *Murphy* v. *B. & A. R. R. Co.*, 88 id. 146; *Hussey* v. *Coger*, 112 id. 616; *Slater* v. *Jewett*, 85 id. 61; *Weber* v. *Piper*, 109 id. 496; *Rose* v. *B., etc., R. R. Co.*, 58 id. 217; *Newbauer* v. *N. Y., L. E. & W. R. R. Co.*, 101 id. 607; *Wright* v. *N. Y. C. R. R. Co.*, 25 id. 562; *Brick* v. *R. R. R. Co.*, 98 id. 211; *McCosker* v. *L. I. R. R. Co.*, 84 id. 77; *N. P. R. R. Co.* v. *Hambly*, 154 U. S. 349; *Crown* v. *Orr*, 140 N. Y. 450; *Murphy* v. *N. Y. C. R. R. Co.*, 11 Daly, 122; *Moeller* v. *Brewster*, 131 N. Y. 606; *White* v. *W. L. Co.*, Id. 631; *Marsh* v. *Chickering*, 101 id. 396; *Dorr* v. *L. V. R. R. Co.*, 158 Penn. St. 364.)

BARTLETT, J. The plaintiff's intestate, who was a car repairer, brought this action to recover damages for personal injuries received by him while working in defendant's repair yard in Buffalo.

The jury rendered a verdict in his favor for $10,000, and the General Term of the Superior Court of Buffalo reversed the judgment on questions of law, ordering a new trial, and the intestate's administratrix (he having died after verdict rendered) appeals to this court giving the usual stipulation for judgment absolute in case of affirmance.

The facts in this case are simple and will be assumed as stated by the intestate for the purposes of this appeal.

There were three tracks running east and west at the place in the repair yard where deceased was working on the day of the accident; the southerly track was No. 21; the middle track, No. 2; the north track, No. 8. It is undisputed that the only entrance to these tracks was from the east; that No. 21 and No. 2 were used exclusively for repairing cars, and No. 8 was known as the "cripple track," on which were placed cars needing repairs; that the repairing tracks were protected by flags when men were at work under the cars, but no such precaution was adopted on track No. 8, as no repairing was done there, and cars were shunted thereon at all hours of the day.

The deceased testified: " I was working right next to track No. 8 and within a short distance for three months, and saw cars on that track every day and the way they did business there."

From five hundred and fifty to nine hundred men were employed in the repair yards, and one Robert Gunn was foreman in charge of the repairs of cars; O'Day was assistant foreman and Getz was the man who distributed the various articles of hardware such as bumper springs, braces, etc., to the men when at work.

The men were divided up into small gangs and one Tracy was foreman or gang boss of the gang in which the intestate worked.

On the day of the accident the intestate and another man were at work repairing a car on track No. 2, and found they needed an eight-inch bumper spring; the intestate applied to Getz for the spring and was informed that he did not have one; he then went to what was known as the scrap pile,

which contained second-hand material of all kinds, and failed to find the required article there; he then reported these facts to the gang boss, Tracy, who told him he had better go down to No. 8 track and take one from a car there; in company with his fellow-workman intestate followed out this suggestion, and while under a car on track No. 8, in the act of removing a bumper spring, some cars were backed in on that track, moving the car under which intestate was working, and inflicting upon him very serious and permanent injuries.

The only legal question in this case is, did the gang boss, Tracy, in suggesting to the intestate to go down on track No. 8 and get the spring; represent the defendant?

It is admitted by the learned counsel for the appellant that there is no direct evidence in the case showing that it was any part of Tracy's duty to furnish materials required by the workmen under him, but he insists that the defendant having failed to designate any one person whose duty it should be to borrow springs from other cars for temporary use, and still continuing the business of car repairing, it not only acquiesced in the gang foremen procuring such materials, but impliedly authorized them to procure them wherever they could.

The appellant's counsel also admits that Tracy was the fellow-servant of the intestate in everything except in the performance of a duty which the law imposed upon the defendant, viz., procuring materials for use.

We are unable to adopt these views.

It would lead to the establishment of an exceedingly unsafe rule to hold that a gang boss over forty or fifty men could, without direct authority from the company, change the safe and proper rules in pursuance of which the work in the repair yards was conducted, and direct workmen to prosecute their labors under cars standing on tracks other than the regular, duly protected repair tracks.

Tracy was in no legal sense the representative of the defendant when he suggested to the intestate that he should procure a spring from a car standing on track No. 8; he was a fellow-servant making a very unwise and dangerous suggestion.

A servant who sustains an injury from the negligence of a superior agent, engaged in the same general business, cannot maintain an action against their common employer, although he was subject to the control of such superior agent, and could not guard against his negligence or its consequences. (*Sherman* v. *Rochester & Syracuse R. R. Co.*, 17 N. Y. 153; *Loughlin* v. *State of New York*, 105 id. 159.)

The order appealed from should be affirmed and judgment absolute directed for the defendant, with costs.

All concur.

Ordered accordingly.